and we have Mr. Boron for the appellant. I see you reserve two minutes for rebuttal and you can begin whenever you're ready. Thank you, Your Honor. Good morning, Your Honors. I am Eric Boron. I'm from the law firm Hurwitz Law.   We represent the plaintiff appellant, Union Mutual Fire Insurance Company. This is a subrogation case and it has to do with a very large seven-alarm fire that occurred on Liberty Avenue in Queens in 2017. The fire not only burned the property that is at 110-14 Liberty Avenue where the fire started, but then it spread. And it spread to a number of buildings on that block. And unfortunately for my client, four of those buildings were insured by Union Mutual. Union Mutual did pay the fire loss claims on those four buildings and now has commenced this action and is pursuing this subrogation action. We have lost at the district court on the summary judgment motion. When I say we lost, we did not move, but the defendants moved and were granted summary judgment. I'm here today to explain to you why we believe the district court judge erred and the district court judge failed to apply the guiding principles that Your Honors know must be applied when considering a motion for summary judgment. The U.S. Supreme Court observed in 2013 that there's, the law sets a relatively lenient standard for avoiding summary judgment. And as this court has often said. The claim is that the power setup or the power strip or the extension cords were being used improperly by the defendants? Yes. What evidence is there in the record of improper usage? There is evidence in the record, Your Honor. The testimony of the fire marshal? No, the testimony of the fire marshal said that the fire may have started there. So maybe you have gotten to the point of saying that the cords, extension cords, were the cause. But what evidence do you have that there was wrongdoing or a reciprocity given the fact that there's also evidence in the record that it might have been how they were manufactured? So, you know, my problem is that I don't see what evidence there is of negligence. If there were evidence of negligence, then there are cases, I've written some, Liriano and so on, that may be sufficient to be evidence of causation. But I don't see the evidence of negligence in the first place. There are photos that were taken by the FDNY, and they're in the photo log that is in the record. Those photos show numerous extension cords burned because this fire burned so hot. But even if that were true, I think the question is, if that's true, even if it was caused by the court, what evidence is there of improper use by the people you're suing? What is your evidence of that? Let me make more focus. I think you're trying to rely on the fire marshal for that, right? Both the fire marshal and the supervising fire marshal. Right, but Fire Marshal Lewis, when he was asked in his deposition, your report doesn't make any mention that you believe the owners or the tenants used or the power strip or extension cords in an improper manner. No, there's nothing in there to say that. That would be speculation on your part. If you said that they used them improperly, yes. So he doesn't support that they did something improper. He's saying it would be speculative. And if the jury would have to rely on him, they would be speculating, right? If the expert says it would be speculation, why wouldn't it be speculation from the jury? In this case, as in many fire loss cases, when there is absolutely no eyewitness, the fire happens after hours, there's no video surveillance to show what happened. The evidence that exists is circumstantial. What is that evidence? What is the evidence? Two low-gauge extension cords connected together at the scene of the fire. So why don't you have an expert that says if somebody does that, that's an improper use. You're not allowed to do that. The fire marshal and the supervising fire marshal both said that. Where does the fire marshal say that they improperly used? I just read you what the fire marshal said, and I could read you what Mr. Kelly said. The other fire marshal said this was a question to him. Based on your recollection, is there anything in the report that puts any fault upon any party with respect to the cause of the fire? No, I don't believe there was. So both of them attribute no fault to the tenant or the owner. I understand what you're saying, but you have to have somebody who supports that. Your Honor, that is, of course, the critical question that you must assess. But that question that was posed is about what is stated in the report. You may have evidence that it was the cords. There are some. It's dubious because we're not clear. But you may have evidence of that. And you do have the fact that the plaintiffs may have lied about their use of the cord. But that doesn't say anything about the cords being used in a defective way. And I'd be willing, you know, maybe even to say, okay, cords don't explode or do unless they are used in a defective way. Except that there's specific testimony that they do, even in another. So you don't have any evidence and you don't have a basis for res ipsa doing circumstantial. So where are we? At page A-285 of the record is the testimony of the fire marshal saying that when these low gauge extension cords are connected one to another, that it can result. There is no doubt that one possible cause. Yes. Of fire is wrong use of cords. And another possible cause of fire is manufacturing defect. But what is there in this record that says anything about it being wrong use? It's our position that the issue and the determination as to whether this circumstantial evidence is sufficient must be put to the jury. Here the judge has come to his own conclusion about what the result of the analysis of circumstantial evidence is. There are some cases in torts where one party has so much more knowledge of what went on than the other one that courts have gone very far in attributing negligence in order to get them to speak. But that isn't this case. They're usually cases of explosions and things of that sort. There are also cases in torts where we are so much more concerned with making a mistake in one direction rather than in the other that the burden is put very strongly. These are New York cases and there are there. But that isn't this case either. So here where we have no theory at all from the defendants as to why the fire started. There is only this circumstantial evidence. I will grant that it is not a pile of circumstantial evidence that's going to overwhelm anybody. But when the issue is that the judge is supposed to look at all of the evidence in the record and the facts that are presented through that evidence and look at them in the light most favorable to my client and draw all reasonable inferences. Here where there's no other theory as to what happened, the reasonable inference must be that there's circumstantial evidence here. Cords connected to other cords, freezers in the middle of the building. No other way to power those freezers besides getting cords coming from the wall sockets out to the middle of the building. That's the error that the judge made. All right. Thank you, Mr. Boron. You have your two minutes for rebuttal. Thank you, Your Honor. We'll hear now from Mr. Rothman. Good morning. My name is Dennis Rothman. I represent the defendants at Pelley's, a Caribbean market near Aranda. We agree with the plaintiff that there was a big fire in Queens on March 4, 2017. But how big the fire was and how many buildings burned and whose buildings there were aren't at issue here. The only issue is the issue of causation. Summary judgment in this situation was properly granted. The plaintiff's appeal is based on two fundamentally mistaken arguments. And one of those arguments is that a jury should evaluate the facts and come to its own conclusions on the cause of the fire. There is evidence that there were these low-gauge extension cords plugged in, lots of extension cords. And there's testimony that when low-gauge extension cords are used in that fashion, that can or that might cause a fire. Why isn't that enough to get the case to the jury? The district court correctly characterized the marshal's testimony in that area as speculative. He was not illustrating, oh, this can happen. I'm not asking about his testimony regarding the cause. I agree, that's speculative. But he did say clearly that when you put low-gauge extension cords together, it creates this burn and that can be a risk. And you have the photographs that that was the situation. My question is why is that not enough? Because it is speculation for the trier of fact. And the trier of fact, because there was no ascertaining what was plugged into what. That's quite clear from the fire marshal's testimony. I believe it's recapitulated in the district court's opinion. No, aren't you really saying that there's no testimony that what was done in that was wrongful? That was done was? I'm sorry? That what was done was wrongful. That is correct. That it was negligent. It may have been. Your focusing on cause seems to me a bit odd. The question isn't whether those might have been caused. There is not much, but some evidence of causation. And if the causation were due to negligence, then we might be there. But what evidence of negligence? I'm puzzled by your focusing on causation, and I understand Judge Chin's pushing you on that. And, Your Honor, there doesn't, Judge Calabresi, there doesn't seem to be any evidence of negligence, especially where the marshal testified that manufacturing defects. What about plugging multiple low-gauge extension cords into a power strip? Is that negligence? On its own? It's not a good idea. Would you agree with that? Not. It depends on the load that's applied to it. And the load applied to it hasn't been ascertained. If the load was light, then it's not negligent. These are freezers, though. These were freezers, right? It's a pretty heavy load, right? A freezer? It's not clear from, in fact, the marshals testified they couldn't tell what was plugged in. We don't know whether the freezers were plugged into this array of, yeah. We do not. What's more, there is nothing for the jury because this is not a jury case. The plaintiff commenced this action in district court. There is no jury demand anywhere, nowhere on a pleading. There is no separate jury demand. A jury has never been demanded. So all this fact-finding, we could just substitute fact-finding for jury. That doesn't affect the standard. And all of the testimony and all the documents are in the record on the motion. There's no contention that there's mystery evidence waiting that's not in the motion. The district court did not find your way by doing fact-finding. So the question of whether there's a jury or not is, again, irrelevant. The question is, was there enough for a fact-finder? Because if a court decided as a summary judgment when it should have done a fact-finding, then we would have to reverse. So going down that way is, again, a useless way. I suggest that reversal would be an all-but-academic result since the same person — I'm an academic, so be careful when you say that. I've been an academic in this field for 60 years, so be careful. You ran into the torts professor today. And the Sterling professor, no less. The same trier of fact would review the same documents and get the same testimony from the stand that is in the depositions. The speculation that — That's not a good argument, though. I mean, you would evaluate credibility. If there was an issue of fact, just the fact that it was a bench trial wouldn't mean, like, why bother. Obviously, they would then hear from the witnesses. But the more fundamental point is that there is nothing that would rationally allow — whether there's something that would rationally allow the fact-finder to conclude causation based on even construing the testimony most favorably to them. Isn't that the bottom line? It's the bottom line, and there just isn't enough to present. You could have a situation, even though the prior marshal said I would be speculating, if there were other witnesses who a fact-finder could hear, who could fill in some of the gaps that the prior marshals — like, if, for example, you had testimony from people who worked in the store as to what was done with the courts, that could then combined be enough even if the prior marshals themselves could not opine, right? You agree with that? Yes, but the testimony of the people who worked in the store is in the record on the motion, and there is no such testimony. I understand. So the deficits are just overwhelming. I'm tempted to — Should we make something of the fact that your clients did lie about using the cord? It's not clear that they did. The plaintiff says so. Well, they said they never used the cord, and there's plenty of evidence that they did. So there is enough evidence — I'm not saying they lied, but there's enough evidence that a jury could find or a fact-finder could find that they lied. Is that enough to cause us to say if they lied about this, there's evidence that they were misused? Is that enough? Not every store witness testified on the absence of extension cords. It is entirely conceivable and perfectly consistent with the truth that the witness who was asked, did you use extension cords, did in fact not use extension cords, and the extension cord was placed by someone else. Yes, but you again are now saying that one could find that the person didn't lie. But one could also find that that witness did lie. Is that enough to make anything out of or not? Not when you cannot ascertain what was plugged into what and what loads existed. You would agree that there is an issue of fact as to whether extension cords were used. Oh, no. We believe that extension cords were used. Okay. You have my argument, Your Honors. All right. Are there any further questions? No, thank you. Thank you. Mr. Barron, you have two minutes. Thank you, Your Honors. I do think this has been a useful discussion. I think that you do understand what the issues are. And so the issue of the employees saying that three different employees saying no extension cords in the market raises a material question of fact. And once there's one material question of fact, then summary judgment must be denied. Let's assume that they're wrong and extension cords were used, and the photos show that there were extension cords there. But, again, we go back to what is the evidence of negligence? What is the evidence of causation? Well, the trier effect would be entitled to find out through the testimony and the cross-examination of all the witnesses, including those employees. I know, but they're not electricians. The fact finder is not an electrician who can say what would cause the fire with respect to the extension cords and who would be at fault for that. I know you're trying to rely on the fire marshals, but if we were to disagree with you and say, like, the fire marshals in this case just don't do that for you, why don't you have an expert who does that for you? I think it's in the record you hired an expert, right? No. That is absolutely incorrect. The record is not correct. The argument that has been made by the plaintiffs that we hired an expert for trial is not accurate. Okay. We did engage somebody that went and looked at some of the burn items. Why don't you have an expert then that says that? If, in fact, what you're saying is true, you would think there would be an expert who would say, I've looked at the cords on the floor, and I opine that if those cords were used to plug into the freezer, into that outlet, in combination, that would be an improper use. And then you could put on the store witnesses and try to establish whether or not that's happened, but you don't have an expert that does that, right? Because there are so many unknown facts. That's the problem. That's the problem with the case. There are so many unknowns. But all that we have in terms of the burden. So you want a fact finder to just speculate about the unknown facts, right? If you can't find an expert to opine on that because of the unknown facts, how can you expect a fact finder with no expertise to reach that conclusion? We do have the fire marshal and the supervising fire marshal saying that when you put these cords together, it raises the risk of fire, and then they have the fire marshal. And they also said it could be a manufacturing defect. I could cite you the testimony. Fire marshal will say that. Could it have been a manufacturing defect? They said, yeah, it could have been a manufacturing defect. That's the problem because, of course, you do have cases where something happens and where you say when this happens, a jury is entitled to find more probably than not that there was negligence and that that wrongdoing was the defendant's. But the problem here is that you actually have testimony which says these may have been the cause, but the cause may have had nothing to do with the defendants. And so the classic most favorable to showing negligence cases, the race ipsa cases, don't apply. I want to conclude my rebuttal by saying that the existence or nonexistence of the use of extension cords by those employees and the rest of the East Caribbean market and the owner of the building is a material question of fact. They have denied it, and yet there's all these extension cords there. It's material because if they never used extension cords and those weren't their extension cords and they were just there from 40 years ago when somebody else used extension cords in the market, the whole case is gone, kaput, right? Okay. That's what makes it material. All right. Thank you. Thank you. You both get three credits today from Judge Calabresi for the tort case. We'll reserve decision. You have a good day. And I'll be sending my CLE certificate to decide.